IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| Angela McElveen, | ) | C/A No. 4:12-874-RBH-KDW |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| Mike Reichenbach Ford Lincoln, Inc., | ) | |
| Defendant. | ) | |

Plaintiff Angela McElveen filed this action against her former employer Defendant Mike Reichenbach Ford Lincoln, Inc. alleging causes of action for sexual harassment and retaliation, pursuant to Title VII of the Civil Rights Act of 1964, as amended. ECF No. 1. On May 30, 2012, Defendant filed a Motion to Compel Arbitration and to Stay. ECF No. 17. Plaintiff filed a Response in Opposition on June 18, 2012; Defendant filed a reply memorandum on June 27, 2012. ECF Nos. 21, 22. The undersigned conducted a hearing on Defendant's motion on August 8, 2012, at which both Plaintiff and Defendant appeared through counsel. Having considered the parties' briefs and argument, the undersigned submits this report recommending Defendant's motion be granted.[1]

I. Law/Analysis

Plaintiff was employed as a service cashier for Defendant car dealership in Florence, South Carolina, for approximately one year. ECF No. 21 at 1. Plaintiff signed an arbitration agreement prior to the start of her employment with Defendant. ECF No. 17-2. Defendant argues that the issues in Plaintiff's lawsuit fall within the coverage of the arbitration agreement,

---
[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28, U.S.C. § 636 (b)(1)(B) and Local Rule 73.02(B)(2)(g), D.S.C.

and therefore, the Federal Arbitration Act ("FAA") requires arbitration of Plaintiff's claims. ECF No. 17-1. Plaintiff argues that the FAA applies only to arbitration agreements in which the "underlying transaction" involves interstate commerce and that the "underlying transaction" in this matter was devoid of interstate commerce because it was between cashier and car dealership. ECF No. 21 at 2-3. Plaintiff also argues that, even if the court were to find the arbitration agreement valid, the arbitration clause is unconscionable and therefore unenforceable. *Id.* at 5.

"The Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16 (2006), governs the rights and responsibilities of the parties with respect to an arbitration agreement." *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009). "Under the [FAA], a party may demand a stay of federal judicial proceedings pending exercise of a contractual right to have the subject matter of the federal action decided by arbitration, unless the party seeking arbitration is 'in default' of that right." *Microstrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001) (internal quotation marks omitted).

The court views a motion to compel arbitration in light of the strong federal and state policy favoring arbitration. *See, e.g., Patten Grading & Paving, Inc. v. Skanska United States Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (noting strong federal policy favoring arbitration); *Carolina Care Plan, Inc., v. United HealthCare Services, Inc.*, 606 S.E.2d 752, 755 (S.C. 2004) ("South Carolina law generally favors arbitration."). The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). To that end, "the heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration." *Peoples Sec. Life Ins. Co. v. Monumental Life*

*Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989) (citation omitted). Thus, the court may not deny a party's request to arbitrate an issue "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id.*

A. Applicability of the FAA

A litigant can compel arbitration under the FAA if the litigant can demonstrate: "(1) the existence of a dispute between the parties; (2) a written agreement that includes an arbitration provision which purports to cover the dispute; (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce; and (4) the failure, neglect or refusal of the [party] to arbitrate the dispute." *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991).

Although Plaintiff contends that the party's agreement does not touch or concern interstate commerce, the undersigned disagrees. "The FAA has an expansive reach, similar to that of the Commerce Clause, such that an arbitration clause merely 'affecting' interstate commerce would be covered by the statute." *THI of S.C. at Columbia v. Wiggins*, No. 11–888, 2011 WL 4089435, at *1 n.3 (D.S.C. Sept. 13, 2011) (citing *Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 273-74, (1995)). "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (internal quotation marks omitted).

In support of its motion, Defendant submitted the affidavit of Mike Reichenbach, owner of Defendant Mike Reichenbach Ford Lincoln, Inc. ECF No. 22-1 ¶ 2. Reichenbach attests that Reichenbach Ford Lincoln, Inc. sells new Ford and Lincoln vehicles manufactured in states other than South Carolina and subsequently transported across state lines to the dealership. *Id.* ¶4.

Reichenbach further states that his dealership acquires approximately 100 new and used vehicles a month and that almost all these vehicles are transported across state lines to the dealership. *Id.* ¶ 5. Reichenbach also contends that he places television ads in both South and North Carolina, and every month he sells vehicles to customers who live in states other than South Carolina. *Id.* ¶ 6. Reichenbach attests that Plaintiff worked as a cashier in the service department and that all parts used in the service department are manufactured in and distributed from a state other than South Carolina. *Id*. ¶¶ 7, 10. Plaintiff also regularly assisted out-of-state customers, and handled transactions with financial institutions located in states other than South Carolina. *Id.* ¶ 10. The undersigned finds this evidence sufficient to fulfill the interstate commerce requirement.

Plaintiff cites to *Timms v. Greene*, 427 S.E.2d 642 (S.C. 1993), as support for her argument that the transaction at issue does not involve interstate commerce. In *Timms*, the Supreme Court of South Carolina found that the plaintiff's contract for patient-residential services with the defendant was devoid of any basis for holding that commerce was involved in the transaction between the parties. *Id.* at 644. *Timms,* however, is distinguishable from the present case. *Timms* was a personal injury case between a patient and a nursing home, whereas Plaintiff is employed by Defendant and works in an area of Defendant's business that is involved with interstate commerce.

Plaintiff also argues that the United States Supreme Court's recent decision in *National Federation of Independent Business v. Sebelius* supports her argument to limit the expansiveness of the Commerce Clause in this case because the activity at issue is an employment contract and not the sale of cars. *See Sebelius*, 132 S. Ct. 2566, 2587 (2012) (finding that because the Commerce Clause permits power over "activity," it does not support the individual mandate in the Affordable Care Act because it would permit Congress to regulate inactivity rather than existing commercial activity). However, as noted by Defendant's affidavit, the activities

performed by Plaintiff in her role as service advisor and cashier affected interstate commerce activities, such as selling products manufactured in states other than South Carolina and handling financial transactions with out-of-state financial institutions. *See* ECF No. 22-1 ¶ 10, *see also Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *6 (M.D. Fla. Mar. 10, 2008). In *Williams*, the plaintiff, an employee of a car dealership, argued that his individual employment duties did not have a substantial effect on interstate commerce, and therefore the agreement to arbitrate was invalid. The court disagreed, finding that the proper focus was the nature of the employer's business, not the plaintiff's individual duties. The court further noted that, even if it narrowed the focus to plaintiff's individual duties, his services contributed directly to the car dealership's "activities and operations, which in turn 'affected' interstate commerce" and plaintiff "was also affecting interstate commerce because he was performing functions that were 'within the flow of interstate commerce.'" *Id.* The term "involving commerce" in Section 2 of the FAA is interpreted to "signal the broadest permissible exercise of Congress' Commerce Clause power" to encompass activities within the flow of interstate commerce. *Citizens Bank,* 539 U.S. at 56. The undersigned finds that because the employment relationship between Plaintiff and Defendant affected interstate commerce, the FAA applies.

      B. Unconscionability of Arbitration Provision

The FAA provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In other words,

> state law, whether of legislative or judicial origin, is applicable if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that

5

> a contract to arbitrate is at issue does not comport with this requirement of § 2. [citation omitted] A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot.

*Perry v. Thomas*, 482 U.S. 483, 492 n.9 (1987); *see also Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) ("Thus generally applicable contract defenses such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening § 2 [of the FAA].").

South Carolina law recognizes "[u]nconscionability . . . as the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms which are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Fanning v. Fritz's Pontiac–Cadillac–Buick, Inc.*, 472 S.E.2d 242, 245 (S.C. 1996).

> In determining whether a contract was "tainted by an absence of meaningful choice," courts should take into account the nature of the injuries suffered by the plaintiff; whether the plaintiff is a substantial business concern; the relative disparity in the parties' bargaining power; the parties' relative sophistication; whether there is an element of surprise in the inclusion of the challenged clause; and the conspicuousness of the clause.

*Simpson v. MSA of Myrtle Beach, Inc.*, 644 S.E.2d 663, 669 (S.C. 2007) (citation omitted). When analyzing whether an arbitration agreement is unconscionable, the Fourth Circuit instructs courts "to focus generally on whether the arbitration clause is geared towards achieving an unbiased decision by a neutral decision-maker." *Simpson* at 668 (citing *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999)). "Plaintiff bears the burden of showing that the arbitration provisions in the agreements at issue are unenforceable." *Smalls v. Advance Am.*, No. 2:07-3240-

TLW, 2008 WL 4177297, at *14 (D.S.C. Sept. 5, 2008) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).

Plaintiff argues that the arbitration agreement is unconscionable because, had she understood the significance of revocation of her right to a jury trial, she would have been surprised. Plaintiff notes that the record contains nothing indicating the agreement was explained to her or that she understood its terms. Accordingly, she argues that she lacked meaningful choice in entering into the arbitration clause. ECF No. 21 at 5-7.

The terms of the arbitration agreement are contained in a separate one-page document, set in normal text (rather than obscured in smaller text or in a footnote), and the language concerning waiver of a jury trial is capitalized and set apart in a paragraph just above Plaintiff's signature. The arbitration agreement states as follows:

> I UNDERSTAND AND AGREE THAT THIS AGREEMENT TO ARBITRATE CONSTITUTES A WAIVER OF MY RIGHT TO A TRIAL BY JURY OF ANY MATTERS SUBJECT TO ARBITRATION UNDER THIS AGREEMENT.

ECF No. 21-1. Plaintiff signed the agreement just below this language. *Id.* "[A] party may waive her right to adjudicate disputes in a judicial forum." *Sydnor v. Conseco Fin. Servicing Corp.*, 252 F.3d 302, 307 (4th Cir. 2001). The paragraph containing the waiver is not inconspicuous, and Plaintiff acknowledged her understanding of the waiver of her right to jury trial. *Id.* Plaintiff cannot now prevail by arguing surprise based on her claimed lack of understanding. "[A] party signing a written contract has a duty 'to inform himself of its contents before executing it, . . . and in the absence of fraud or overreaching he will not be allowed to impeach the effect of the instrument by showing that he was ignorant of its contents or failed to read it.'" *Id.* at 306. Any lack of sophistication on the part of Plaintiff does not overcome the fairness of the terms in the agreement itself. *See Munoz v. Green Tree Fin. Corp.*, 542 S.E.2d 360, 365 n.5 (S.C. 2001) ("[I]nequality of bargaining power alone will not invalidate an arbitration agreement.").

Finally, Plaintiff argues that the agreement is unconscionable because it "requires [her] to pay attorney fees to Defendant if she loses her Title VII case, which is contrary to federal law. ECF No. 21 at 6. The undersigned disagrees. Review of the challenged provision indicates it does not automatically provide for her to pay attorneys' fees if she loses her Title VII case. Rather, the provision allows the arbitrator to award attorneys' fees to a prevailing party when an applicable statute so provides. The arbitration agreement provides that "[i]f any party prevails on a statutory claim, which affords the prevailing party attorneys' fees, then the arbitrator may award reasonable attorneys' fees and costs to the prevailing party." ECF No. 21-1.

Considering the Fourth Circuit's admonition to focus on whether the arbitration agreement is "geared towards achieving an unbiased decision by a neutral decision-maker," the undersigned cannot conclude that the arbitration provision is unconscionable. Accordingly, the undersigned finds that the arbitration clause is enforceable.

C. Stay

The FAA requires a court to stay "any suit or proceeding" pending arbitration of "any issue referable to arbitration under an agreement in writing for such arbitration." 9 U.S.C. § 3. "This stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc*., 303 F.3d 496, 500 (4th Cir. 2002). If the district court accepts the undersigned recommended finding that the arbitration agreement is enforceable, the case must be stayed pending the outcome of the arbitration.

II. Conclusion

Based on the foregoing, the undersigned recommends that Defendant's Motion to Compel Arbitration and to Stay, ECF No. 17, be granted and that the matter be stayed pending the outcome of the arbitration.

IT IS SO RECOMMENDED.

August 22, 2012 Kaymani D. West
Florence, South Carolina United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**